IRVIN E. WATENPAUGH, APPELLEE, V. L. L. CORYELL & SON ET AL., APPELLANTS.

283 N. W. 204

FILED JANUARY 6, 1939. No. 30397.

608

*Walter C. Weiss, Tunison & Joyner* and *Richard B. Travis,* for appellants.

*Baldwin & Baldwin, contra.*

Heard before ROSE, C. J., PAINE, CARTER and MESSMORE, JJ., and LANDIS and KROGER, District Judges.

LANDIS, District Judge.

The principal question for decision is whether the judgment on the verdict rendered in the court below for plaintiff, Irvin E. Watenpaugh, against the defendants L. L. Coryell & Son, a corporation, and its employee Emil A. Hebel, for damages to personal property, situated on adjacent premises, destroyed by fire alleged to have been

caused by negligence, is sustained by sufficient evidence.

Defendants joined issue by general denial to plaintiff's claim of negligence set out in his petition as:

"That on the premises occupied by the defendants * * * was a certain room, about seven feet by seven feet, which was used by said defendants as an office; that in said room defendants had erected or caused to be erected a heating stove; that on the night of January 2, 1937, the defendant, Emil A. Hebel, carelessly and negligently allowed oily coats, jackets, blankets and other combustible materials to be hung up and accumulated in said room; that at said time and on said date said defendant, Emil A. Hebel, carelessly and negligently kindled and built up a large and extremely hot fire in said stove, and carelessly and negligently left said office room with no one to watch and regulate said fire; and that in a few moments thereafter said stove became overheated and as a result of the carelessness and negligence of said defendant the buildings located on said premises were damaged and destroyed by fire."

Plaintiff's evidence to sustain his claim of negligence showed that there was an office room 7 foot square in the northeast corner of the transport shed which contained on the night of the fire a cast-iron heating stove 35 inches high, with a 14-inch fire bowl, with a fire in it, a coal bucket containing nut size soft coal, a shelf table, above this pigeonholes for filing reports, with paper reports on the table and in the pigeonholes, a box on the floor, 10 or 11 unionalls hanging on the walls, some of these within 18 or 24 inches of the stove. These unionalls were used by the men in servicing the trucks and were greasy. Also on the floor were three quart tin cans with screw tops, used to take samples of kerosene out of the trucks to send to the state; that it was cold and windy at the time of the fire; that it started around 10 p. m., January 2, 1937, and when seen the fire was coming out of the roof above, and ceiling of the office.

Between 11 and 11:30, after the fire started, one witness testified as to defendant Hebel: "He said that he had put

in some coal into the stove to build up a fire and had then left the room to go to the lunch room for a cup of coffee." Another witness testified to this same conversation: "He said that he put a little coal, or put coal in the fire, and had went out to get some coffee, and the fire had started while he was out." This same witness testified to a conversation on the day after the fire: "I said, 'then, the fire was attributed to the over-heated stove?'" And he answered "Yes."

On the afternoon of the day after the fire another witness testified to a conversation: "He told me that he built a hot fire in there and then went to the lunch room, and said for me not to mention it to anybody because he didn't want to let it out."

The gist of this action is negligence. It is not enough merely to show that a fire actually occurred and that plaintiff's personal property was injured thereby, but plaintiff must go further and show that the proximate cause of the happening of the fire and the consequent damages to plaintiff's property was the negligence of the defendant in one or more of the particulars claimed.

No presumption of negligence either in the kindling or management of the fire is raised by the destruction of property by it.

"In action for damage by fire, alleged to have spread from defective stove in adjoining building, judgment for plaintiff could not be sustained, where there was no proof that defect in stove caused fire." *Lezotte v. Lindquist,* 51 S. Dak. 97, 212 N. W. 503.

In an action for personal injuries sustained as a result of fire allegedly caused by gas-pipe leak existing by reason of gas company's negligence, we have held in *Mischnick v. Iowa-Nebraska Light & Power Co.,* 125 Neb. 598, 251 N. W. 258, that directed verdict for defendant company was proper in absence of proof showing exact cause of fire.

By negligence is meant the doing of some act, under the circumstances surrounding the fire involved, which a man of ordinary prudence would not have done, or the

failure to do some act or take some precaution which a man of ordinary prudence would have done or taken. It is merely a convenient term under which to group a failure to conform to standards of conduct insisted on by society. We should consider whether probable harm to plaintiff's property could have been reasonably anticipated as within the range of defendant's conduct.

The evidence of the plaintiff fails to show the cause of the fire. There was no defect in the stove, stovepipe or chimney; there is no proof that any of the articles in the office room caused the fire. When first discovered it was in the ceiling of the office and the roof above. The tin quart cans with screw tops on the floor, the unionalls hanging on the wall, the paper forms on the table and in the pigeonholes in the wall, the box on the floor, none of these is shown as connected with the fire or the cause of it.

Assuming that the statements of defendant Hebel were competent, which we do not decide, they amount to admitting that he put some coal on the fire and went out for a cup of coffee; expressed an opinion the day after the fire to a question as to what the fire was attributed to, and that he had built a hot fire and went to the lunch room, and asked not to be quoted.

On a cold night, the ordinary use of a stove is to place coal in it and build a hot fire. There is nothing to show that the stove was overheated the night of the fire, nor that an overheated stove caused the fire. There could be many different causes for this fire. We cannot say it is unusual for Hebel to leave the office for a cup of coffee. The burden is on the plaintiff to prove that the negligence charged was the proximate cause of the damages, which this record shows was not sustained.

The evidence introduced by plaintiff was insufficient to submit the case to the jury, and the separate motions of the defendants for a directed verdict made at the end of plaintiff's case in chief should each have been sustained.

The trial court committed error in overruling the motions for directed verdict, and this cause is

REVERSED AND DISMISSED.